# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. P. HATCHETT CONNER, Minor.

UNPUBLISHED
July 17, 2018

No. 342033
Wayne Circuit Court
Family Division
LC No. 17-001908-NA

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, APHC, under MCL 712A.19b(3)(g) (failure to provide proper care or custody), MCL 712A.19b(3)(i) (parental rights to sibling terminated due to serious and chronic neglect or abuse), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm.[1]

In August 2015, AR, the infant daughter of respondent's then-girlfriend, died due to blunt-force trauma. Respondent was convicted of third-degree child abuse related to AR's death. In the present case, respondent maintained that he did not know how AR sustained the injuries that led to her death. Norshell Mack, a Child Protective Services (CPS) investigator, stated at the termination trial in this case that respondent "thinks the mom of the child had something to do with it but he's not sure."

On February 20, 2016, respondent and AR's mother had a child, HH. On February 22, 2017, respondent's parental rights to HH were terminated based on respondent's child abuse conviction and the circumstances surrounding AR's death. In terminating respondent's parental rights to HH, the court found that respondent "caused the nonaccidental death of [AR] through blunt-force-trauma." In an order entered after terminating respondent's parental rights to HH, the trial court noted that "[respondent] has a recent history of domestic violence," but did not elaborate.

---

[1] The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(*l*), but this Court held that MCL 712A.19b(3)(*l*) was unconstitutional in *In re Gach*, 315 Mich App 83; 889 NW2d 707 (2016).

-1-

On August 30, 2017, APHC was born to respondent and nonparty mother, NC. On October 23, 2017, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights to APHC. The petition alleged that respondent failed to provide care for APHC, that respondent's rights to HH were terminated due to physical abuse of another child, and that there was a reasonable likelihood that APHC would be harmed if returned to respondent's care. The petition further alleged that respondent did not provide financial or material support for APHC since the child was born and had never visited the child. The petition also recounted respondent's criminal history, the death of AR, and CPS's substantiated child abuse allegations against respondent following an investigation into AR's death. The petition stated that reasonable efforts had been made to prevent the removal of APHC, as the DHHS scheduled a family team meeting for October 5, 2017, during which the DHHS conducted interviews of NC, respondent, relatives of both parents, and respondent's probation officer. Mack indicated that, after the DHHS's investigation, it determined that there was no need to make reasonable efforts to reunite respondent with APHC or to provide respondent services because of respondent's apparent involvement in AR's death.

At the termination trial, Mack testified that she told respondent that the DHHS was required to terminate his parental rights due to his child abuse conviction and the circumstances surrounding AR's death. Mack further testified that, after the DHHS filed a petition in APHC's case, respondent did not "[do] anything"; respondent told Mack that "he had not been able to really provide [for APHC] due to his criminal history and not being able to be employed." Respondent lived with his mother and had not seen APHC since the child's birth. Mack also opined that the termination of respondent's parental rights would be in the best interests of APHC. Although she had no proof of respondent's ability to parent APHC, the DHHS determined that APHC might be harmed in respondent's care based on the death of AR, respondent's criminal history, and the prior termination of respondent's parental rights to HH.

The referee found that there was sufficient evidence to terminate respondent's parental rights to APHC on the basis of his conviction for third-degree child abuse; the termination of his rights to HH; the previous court's determination during those termination proceedings that respondent caused the nonaccidental death of AR; and the previous court's determination that respondent had "some recent history of domestic violence."[2] The referee further found that termination of respondent's parental rights would be in APHC's best interests because respondent was "not in the position to provide any care, custody or support for his child as he [did] not have a legal source of income," he had "not provided any financial support for APHC since he was born," and there was no significant parental bond between respondent and APHC. The trial court agreed with the referee's findings and entered an order terminating respondent's parental rights to APHC.

On appeal, respondent contends that there was insufficient evidence to support both the statutory grounds for termination and that termination was in APHC's best interests. We disagree.

_____

[2] The record does not detail the domestic violence incident(s) to which the referee was referring.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court "review[s] for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides for termination if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

AR died from blunt-force trauma, and her death was ruled a homicide. The trial court concluded that respondent "caused the non-accidental death of" AR. Respondent does not contest this factual finding on appeal. Even if he did, the only contrary evidence at trial was Mack's testimony that respondent told her that he did not know what caused AR's injuries that led to her death. However, there was sufficient evidence to support otherwise. Particularly, the trial court's conclusion that respondent was responsible for AR's non-accidental death is supported by his conviction of third-degree child abuse, which requires a defendant to have (1) knowingly or intentionally caused physical harm to a child or (2) knowingly or intentionally committed an act that under the circumstances posed an unreasonable risk of harm or injury to the child, and the act resulted in physical harm to the child. MCL 750.136b(5)(a)-(b). Based on respondent's conviction for third-degree child abuse and the weak evidence to the contrary, we are not definitely and firmly convinced that the trial court erred by holding respondent responsible for AR's death. *In re Rood*, 483 Mich at 90.

In light of this conclusion, we agree with the trial court that it was likely that APHC would be harmed if returned to respondent's care. The injury to AR was—obviously—significant, causing her death. Respondent's conviction established that he either knowingly caused AR injury or committed an act that posed an unreasonable risk of harm to AR and resulted in injury to AR. Respondent's causing of AR's injury evidences violent behavior towards a child, which in turn evidences a reasonable likelihood that APHC would be harmed if transferred to respondent's care because "how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Accordingly, we conclude that the trial court did not clearly err by finding clear and convincing evidence that there is a reasonable likelihood based on respondent's actions that APHC would be harmed if returned to respondent's care. *In re Moss*, 301 Mich App at 80.[3]

---

[3] Respondent argues that he should have been provided services to improve his parenting skills, implicitly arguing that these services would have allowed him to mitigate the likelihood of harm to the child if transferred to his care. However, the DHHS is not required to provide services in all circumstances, but the agency must justify its decision. *In re Terry*, 240 Mich App 14, 26 n

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

"[T]he focus at the best-interest stage" is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 364, and may consider such factors as "the child's need for permanency, stability, and finality," *In re Olive/Metts*, 297 Mich App at 41-42, and the child's "safety and well-being" in the parent's care, *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

As discussed, the evidence at trial demonstrated that respondent had previously caused severe injuries to a child leading to her death, and, therefore, APHC's "safety and well-being could not reasonably be assured in light of the past severe abuse . . . ." *Id*. at 142.[4] Moreover, respondent refused to accept responsibility for those actions, raising further concerns about APHC's well-being if returned to respondent's care. Respondent has also not demonstrated an ability to fulfill APHC's need for permanency, stability, and finality. See *In re Olive/Metts*, 297 Mich App at 41-42. At the time of termination, respondent had never provided support for APHC. Further, respondent had no legal source of income and no employment prospects, and, therefore, it appeared unlikely that respondent would be able to provide for APHC in the near future.[5] Accordingly, under these circumstances, we conclude that the trial court did not clearly

---

4; 610 NW2d 563 (2000); MCL 712A.18f(1)(b). At the time of trial, respondent had anger management and mental health issues, and was convicted of abusing AR, who ultimately died from her injuries. Prior to the initial dispositional hearing, the trial court determined that respondent would not benefit from services because of the severity of his child abuse conviction. Moreover, pursuant to MCL 712A.19b(4)-(5), the DHHS was not required to provide services because it sought the termination of respondent's parental rights at the initial dispositional hearing. Therefore, we reject respondent's argument that the DHHS should have provided him services.

[4] We recognize that *In re VanDalen* concerned the parents' abuse of their own chidren, but conclude that its reasoning is equally applicable to a case such as this where the respondent abused an unrelated child.

[5] Although it appears that respondent did not have a bond with APHC, which is also a factor to consider during a best-interest analysis, see *In re Olive/Metts*, 297 Mich App at 41-42, it appears that respondent's lack of contact—and ensuing lack of bond—with APHC was court ordered.

err in finding by a preponderance of the evidence that termination of respondent's parental rights was in APHC's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan

---

Therefore, although it does not affect our decision in this case, we do not consider respondent's lack of bond with APHC as weighing in favor of termination.